McIlvaine, J.
Upon the alternative writ and answer, the relator moves for a peremptory writ of mandamus against the defendant.' The foregoing statement of facts is not disputed in the pleadings; and the question is, whether the relator is entitled to payment of the assessment out of the proceeds of the resale of lands in section sixteen, which was originally donated by the United States to the ■State of Ohio upon special trust for educational purposes.
The relator relies upon section seventy-eight (78) of the tax law of April 5, 1859, as amended April 8, 1865 (62 ■Ohio L. 105), which reads as follows : “ All tracts of land set apart for school or ministerial purposes, and sold by and under authority of law, and all lauds which shall be hereafter sold by the United States, shall be subject to taxation as other lands in this state, immediately after such sale; •but school or ministerial lauds shall not be sold for taxes until the purchase monéy therefor shall be fully paid, but .■shall be returned as delinquent, and continued on the duplicate with the taxes of each year charged thereon, and added to the tax and penalty due when the same became delin■quent, until payment be made, or the lands resold by the county auditor pursuant to the laws noty or hereafter in ■force for the saje of such lands ; and .if any taxes against •such lands shall remain unpaid at the time^pf the resale thereof by the county auditor,, such taxes and penalty charged thereon shall be first paid out of the purchase *355 money on such resale, and the remainder only paid into the state treasury to the credit of the school or ministerial fund, as the case may be,” etc.
Conceding that a special assessment for ditches is a tax within the meaning of this section (which is not disputed by the defendant), the terms of the statute would clearly Support the claim of the relator.
The defendant, however, resists the payment upon the following grounds:
1. Because the .relator’s assessment was a charge upon the whole of the northeast quarter of the section, whereas the $800, out of which he seeks -payment, was realized from the resale of the south half of the quarter.
2. Because the whole of said sum of $800 was the principal of a fund arising from the sale of lands intrusted to the state for educational purposes, which, under section 1, article 6, of the constitution of the state, must forever be preserved inviolate aud undiminished.
3. Because that at the date of the commencement of this action, the 78th section of the tax law, above quoted, had been repealed.
1. If it should turn out that the rights of the relator are to be determined by the terms of «section 78, as above quoted, we think it would not matter that a part only of the lands charged had been resold, as the- amount realized was amply sufficient to satisfy the preferred charge.
2. The provision of the constitution, which, it is claimed, this section of the statute contravenes, reads as follows: “ The principal of all funds arising from the sale or other disposition of lands or other property, granted or intrusted to this state for educational and religious purposes, shall forever be preserved inviolate and undimiuished,” etc.
It may safely be affirmed -of this provision, that the “ lands or other property ” producing the funds thus protected from diminution, are such only as have .'or may be granted to the state; so that a fund which the state itself creates, or which arises from a property which the state *356 sets aside for such purposes, is not within the meaning of the provision.
The northeast quarter of the section described in the-writ was originally granted to the state by the United States for educational purposes, and was sold by the state-in 1862 for the sum of $590. That this sum, when realized, would constitute the principal of a sum, which can not be-' diminished, is unquestionable. But it does not follow that if the state, after a forfeiture for non-payment of the purchase money, should resell the same property for a sum greater than the unpaid balance of the purchase money, the excess would also fall within the meaning of the provision. As well might it be claimed that the state is bound to make up the deficiency in case the full amount of the original purchase money could not be collected from the purchaser.
It was the policy of the statute, under which this sale was made, to withhold from the purchaser the legal title-until the purchase money was fully paid; and after twelve months of default in the payment of an installment to sell the land to the highest bidder, and after deducting the balance of the purchase money, to pay the remainder to the original purchaser; but in case the highest bid did not equal the balance of the purchase money, the land reverted to the state, and was subject to resale. This policy was unobjectionable; and it would have béen equally unobjectionable, if, after default, the sale had been to the highest bidder, or if, after forfeiture, the excess, over the unpaid purchase money, realized on a resale had been made payable to the original purchaser.
Now, if these views be correct, it is perfectly clear that there can be no objection to the imposition of taxes upon such lands after sale, and to the application of any excess arising from the resale, after payment of the balance of the original purchase money, to the payment of such taxes,, instead of paying it to the defaulting purchaser.
And if the power of taxing such lands after sale were so-limited that, in no event, could the proceeds of the resale be *357 ■applied to the payment of the taxes, until the original purchase money was fully realized, the case before us would clearly be within the power, as the proceeds of the resale of only a moiety of the lands are ample to. pay the balance of the original purchase money, and also the assessment charged on the whole property. Clearly, such a power of taxation and application of the proceeds of a re■sale would not contravene the provision of the constitution above quoted.
It is suggested, however, that if the power to charge such lands with the payment of taxes be thus limited by ■the constitution, then the provision of section 78 of the tax law is in excess of the power; for the reason that, by the terms of the section, “ the taxes and the penalty charged thereon, shall be first paid out of the purchase money on ■such resale, and the remainder only paid into the state treasury to the credit of the school . . . fund.”
“ That there is an apparent conflict between such a limitation on the power of taxation and the terms of this section can not be denied; but it is only when an apparent repugnancy between the constitution and a statute can not be reconciled by any reasonable construction, that the statute should be declared unconstitutional and inoperative.
"When sectiou 78 was originally passed in 1859, it provided for the unqualified taxation of all school lands, after sale, as other lands were subject to taxation, while, by the amended section of 1865, the right to tax is declared, but it is expressly provided that such “lands shall not be sold for taxes until the purchase money shall be fully paid;” thus plainly recognizing a preference in favor of the school fund over the tax charge. So that, rather than hold the •section unconstitutional it would be reasonable to infer that the case, contemplated by the legislature in the clause ■directing the “taxes to be first paid out of the money arising on the resale and the remainder only to be pa:d to the credit of the school fund,” was where the purchase money on the resale, is sufficient to discharge the taxes and .also the residue of the original purchase money. This con *358 struetion, it is true, would leave unprovided for, in terras, a case where the proceeds of -the resale prove insufficient to-satisfy both charges. When such a case, however, arises,, it will be time enough to determine the rights of the respective funds, as it will be, in another case likely to arise— to wit, where, before forfeiture, the sale money is equal only to the balance of the original purchase money.
Some members of the court incline to the opinion that-the power to tax these lands after sale is not in contravention of the provision of the constitution above quoted,, notwithstanding the security for the payment of the purchase money would-be thereby rendered insufficient. But a majority of the court place the decision of this case on the-ground, that, if the state may not, by taxation of such lands, jeopard the school fund arising from the sales thereof, still, section 78 of the tax law may and should have operation where the imposition of taxes does not affect the payment of-the original purchase money. That the provision of the constitution is satisfied by the preservation of that fund, whether it be realized upon the original sale, or by a resale after forfeiture.
3. As to the repeal of section 78, ás amended April 8, 1865. The repealing act was passed April 18, 1874 (71 Ohio L. 96), seven days after the resale of the property by the’ auditor. At that time the rights of the relator had fully vested, under the section repealed; and these rights were not affected by the repeal, as is provided in the act concerning the enacting and repealing of statutes, passed February 19, 1856. (S. & S. 1.)

Peremptory writ ordered.